James L. Rankin, Appellant, v. Chester-Upland School District, Abbott W. Thompson Associates, and Abbott W. Thompson, Individually, Appellees.

Argued October 4, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Edward M. Seletz,* for appellant.

*Melvin G. Levy,* with him *Levy and Levy,* for appellees, Abbott W. Thompson Associates and Abbott W. Thompson.

*Clement J. McGovern, Jr.,* with him *Leo A. Hackett* and *Fronefield, deFuria and Petrikin,* for appellee, Chester-Upland School District.

OPINION BY JUDGE KRAMER, December 13, 1973:

This is an appeal filed by James L. Rankin (Rankin) from an Order of the Court of Common Pleas of Delaware County dated April 27, 1973, wherein the preliminary objections of Chester-Upland School District (School District), Abbott W. Thompson Associates (Associates), and Abbott W. Thompson, individually (Thompson) were sustained on the basis of the lower court's holding that it lacked jurisdiction. The lower court's Order also dismissed Rankin's complaint, as well as the remaining preliminary objections.

From the record which was transmitted to this Court by the lower court, the subject matter of the case before the lower court is clear; however, the procedural aspects of the case are confusing. On June 19, 1972, the Board of the School District passed a resolution authorizing the execution of a contract between the School District and "Abbott W. Thompson, Architect, in the form presented at this meeting and outlined on AIA Document B231, Standard Form of Agreement Between Owner and Architect, effective July 1, 1972." On July 1, 1972, the School District signed a contract with "ABBOTT W. THOMPSON ASSOCIATES." The agreement was signed by representatives of the School District and "Abbott W. Thompson" designated on the printed form as "Architect."

On March 26, 1973, Rankin filed a class action suit in equity against the three-named appellees in this case seeking (1) to have the contract declared void from its inception; (2) to restrain the School District from making any further payments to Thompson Associates and Thompson; (3) to obtain judgment against the three appellees in a sum sufficient to restore all payments

illegally paid. On April 12, 1973, the three appellees filed preliminary objections. On April 16, 1973, argument was held before the President Judge and Administrative Judge of the lower court sitting as the court en banc. On April 19, 1973, pursuant to Rule 1028(c) of the Pennsylvania Rules of Civil Procedure, Rankin filed an amended complaint. It is at this point in the record where the procedure becomes confused, for on April 27, 1973, the lower court filed an Opinion and Order stating that the case was before the court en banc above-described; however noting on its Order that three judges of the Court of Common Pleas of Delaware County dissented. On April 30, 1973, Rankin filed exceptions to the lower court's Opinion and Order. Finally on May 9, 1973, one of the three judges noted on the lower court's Order as dissenting filed a written dissent. The record does not establish how the three dissenting judges became involved in the decision of the lower court although one of the briefs filed in this Court alludes to a memorandum of the President Judge to the twelve judges of the Court of Common Pleas of Delaware County noting the dissents of two judges of the lower court. Later, the President Judge informed the judges of that court of a third dissent. Exactly how all of the judges of Common Pleas of Delaware County became involved in the decision of the two-judge court en banc is not explained. How the three dissenting judges or the remaining seven judges of the court became involved in that decision is not explained. To add to the confusion, there is no explanation on what happened to the exceptions which were filed. In any event because of the disposition of this case before this Court, as hereinafter noted, these unexplained procedural puzzles need not be answered.

In an attempt to understand the four-count complaint, we believe the following is a fair description of the appellant's allegations. Rankin contends that the

agreement with Thompson Associates is void from its inception because the School District's resolution only authorized a contract with Thompson. Rankin alleges that payments made by the School District under the agreement in excess of $170,000.00 were paid in violation of both State law and in violation of the Federal Wage Stabilization Board Regulations.[1] He also alleges that certain of the payments were for work not covered by the agreement and therefore were for unauthorized work. It was alleged that the agreement violated State law requiring competitive bids, that the invoices under which payments were made were not detailed nor verified, and that the payments made, and to be made, would cause irreparable damage to the School District and its taxpayers. Rankin alleged that he did not have an adequate or complete remedy at law. Although the court below paid scant notice to the amended complaint, a reading of the complaint and the amended complaint permits us to conclude that there is a substantial and significant difference between the two. The lower court did not rule on the amended complaint except to state that it raised "the same issues" as the original complaint and that therefore it was "moot." We believe this was error.

In view of the fact that the lower court sustained only those preliminary objections in the nature of a demurrer, based upon the court's holding that it lacked jurisdiction (the lower court having "dismissed" all the other preliminary objections), we will direct our attention to that sole issue.

The court below and appellees in this case all state that the Public School Code of 1949 (hereinafter School

---

[1] We agree with the lower court that the federal courts have exclusive jurisdiction with respect to questions concerning Federal Wage Stabilization Board Regulations. *See Cheltenham Township v. Cheltenham Police Department*, 8 Pa. Commonwealth Ct. 360, 301 A. 2d 430 (1973).

Code) Act of March 10, 1949, P. L. 30, as amended, 24 P.S. §24-2401 et seq., provides an adequate statutory remedy at law which precludes this equity suit and denies the court below jurisdiction in this case. There can be no question that the School Code clearly states that the finances of the School District shall be properly audited. (*See* 24 P.S. §24-2401.) It imposes a duty on all school boards and their officers to furnish the auditors with necessary records. (*See* 24 P.S. §24-2402.) The School Code further provides for investigatory powers to properly conduct the audit. (*See* 24 P.S. §24-2402 through 24-2404.) In Section 2406 of the School Code (24 P.S. §24-2406) there are provisions which disallow improper or illegal payments by the school districts and provide for the surcharge of any school director voting in favor of any unauthorized expenditures. Finally, in Section 2451 of the School Code (24 P.S. §24-2451) there is a provision for "any taxpayer" to appeal any auditor's report. The lower court held that because of these sections in the School Code, the ". . . surcharges for unauthorized work and for the liability of school directors for improper school orders adequately covers any monetary loss caused by payments made not honestly and in good faith for the best interests of the school district."

At this point, it is important to be reminded that we are here confronted with an appeal from a ruling on preliminary objections. In doing so, we are bound to accept for the purposes of this appeal all of the properly pleaded allegations of fact found in the complaint. At this point in the proceedings, no answer has been filed denying the allegations. It is also fundamental that preliminary objection which will result in the denial of a claim or the dismissal of a suit, should be sustained only in cases which are clear and free from doubt. In essence the question before us is whether the complaint sets forth sufficient averments to invoke equitable re-

lief. *See Schrader v. Heath,* 408 Pa. 79, 182 A. 2d 696 (1962).

It is rather basic that courts of equity have power to prevent or restrain the commission or continuance of acts contrary to law and prejudicial to the interests of the community or the rights of individuals. *See* Act of June 16, 1836, P. L. 784, §13, and Act of February 14, 1857, P. L. 39, §1, 17 P.S. §§282 and 283 respectively. Section 610 of the School Code (24 P.S. §6-610) states that: "The use or payment of any public school funds of any school district, in any manner or for any purpose not provided in this act, shall be illegal."

Reported cases teach us that courts of equity lack jurisdiction where there is an adequate remedy at law, especially where that remedy is set forth in a statute relating to the subject matter. *See Commonwealth v. Glen Alden Corp.,* 418 Pa. 57, 210 A. 2d 256 (1965). At first blush, the holding of the lower court that the audit provisions of the School Code, mentioned above, provide a remedy through the surcharge of the school directors who approve unlawful payment appears controlling, however, further research permits us to conclude that the law in this Commonwealth has established that the remedy must not only be adequate, it must also be complete and effective. *See Schrader v. Heath, supra; Wood v. Goldvarg,* 365 Pa. 92, 74 A. 2d 100 (1950) ; and *Hunter v. McKlveen,* 353 Pa. 357, 45 A. 2d 222 (1946). In essence, it is not whether the relief sought might be available by some statutory remedy, such as the auditing sections of the School Code mentioned above, but rather whether the relief sought is based upon a violation of the School Code for which the statutory remedy does or does not provide an adequate and complete protection for the party bringing the equity suit; e.g. *see Lurie v. Republic Alliance,* 412 Pa. 61, 192 A. 2d 367 (1963). Equity will intervene to restrain acts of officials which are contrary to positive

law or amount to bad faith or constitute a violation of public duty. *See Martin v. Philadelphia,* 420 Pa. 14, 215 A. 2d 894 (1966). In the case of *McLaughlin v. Lansford Borough School District,* 335 Pa. 17, 6 A. 2d 291 (1939), where a lower court decree restraining school directors was affirmed by our Supreme Court, it was stated: "But when it clearly appears, as it does in this case, that the directors were not exercising judgment but were engaged in arbitrarily and, with knowledge, deliberately voting away the taxpayers' money in the respects indicated and corrected by the decree, the court must restrain them. The restraint of an unlawful expenditure is not a substitution of judgment, but a required declaration that the directors have failed to perform their public duty." 335 Pa. at 23, 6 A. 2d at 293. In another case involving a school district, *Downing v. Erie City School District,* 360 Pa. 29, 61 A. 2d 133 (1948), although our Supreme Court reversed the injunction issued by the lower court, it pointedly stated: "As the learned chancellor pointed out in the original adjudication, while courts will not interfere with the exercise of discretionary powers by public officials, if it appears that their action is based on a misconception of law or is the result of arbitrary will or caprice, equity will intervene to prevent an abuse of the entrusted power adverse to the public welfare. . . ." 360 Pa. at 34-35, 61 A. 2d at 136.

In this case, accepting as true all of the allegations of fact properly pleaded, as we must in ruling on preliminary objections, we conclude that Rankin is not challenging the discretion of the Board of the School District, but rather has made allegations concerning illegal payments of school funds and is seeking to restrain such payments together with the return to the School District of all payments which may have been paid illegally to Thompson Associates or Thompson. We believe it important to note that this is not the

usual case of taxpayers or irate citizens seeking to stop the construction of a school building; rather this is a lawsuit concerning a taxpayer who has alleged illegal acts by the Board of the School District.

The auditing provisions of the School Code, mentioned above, relied upon by the lower court may provide some relief through a surcharge against those school directors who voted in favor of the payments made under the subject agreement; but in no way will the audit provisions of the School Code make Thompson Associates or Thompson liable for any payments which may have been illegally paid to them by the School District. Insofar as Thompson Associates and Thompson are concerned, there is no provision of the School Code which provides an adequate and complete remedy for Rankin. On the present state of the record, it is not possible for anyone to determine whether the surcharge provisions of the School Code will adequately protect the taxpayers of the School District. In view of the sizeable amounts of money involved (certainly in excess of $150,000.00), justice requires a court of equity to determine whether the school directors who may be surcharged are financially able to pay the alleged amounts of illegal payment under the said agreement. A court of equity should determine whether the bonds provided by the school directors are adequate to cover the alleged illegal payments under said agreement. In reaching our result in this case, we do not in any way make a final determination that all of the allegations of the amended complaint will be eventually supported in any trial which may be held in this matter. Only a full and complete record after trial will resolve whether Rankin's allegations are sufficient to support the relief for which he prays.

The unusual circumstances of the allegations made in the amended complaint are sufficient to support the intervention and jurisdiction of a court of equity to

determine whether the payments should be restrained and refunds ordered.

In view of the above, we

**ORDER**

AND NOW this 13th date of December, 1973 it is hereby ordered that the Order of the Court of Common Pleas of Delaware County dated April 27, 1973 in the above-captioned matter is vacated, the preliminary objections of Chester-Upland School District, Abbott W. Thompson Associates, and Abbott W. Thompson, individually, pertaining to "lack of jurisdiction" are overruled; and this case is remanded to the court below for the purpose of permitting the appellees herein to file an answer to the amended complaint within 30 days from the date hereof and to proceed with the case in a manner not inconsistent with the Opinion filed herewith.